**FOR THE EIGHTH CIRCUIT**
# United States Court of Appeals

_____

No. 00-3596

_____

| | | |
|---|---|---|
| Clifford Lansdown, the | * | |
| Administrator of the Estate | * | |
| of Roger Dean Lansdown, Deceased, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Bill Chadwick, et al., | * | Appeal from the United States |
| | * | District Court for the |
| Defendants-Appellees. | * | Western District of Arkansas |
| ------------------------------------------- | * | |
| | * | |
| John Urban and Andy Urban, | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Baxter County, Arkansas and | * | |
| Charlie Garrison, | * | |
| | * | |
| Defendants-Appellees. | * | |

Submitted: May 16, 2001

Filed: August 2, 2001, 2001

_____

Before MCMILLIAN and BEAM, Circuit Judges, and KYLE, District Judge.[1]
_____

KYLE, District Judge.

Appellants in these consolidated cases appeal from the district court's[2] adverse grant of summary judgment in their civil rights actions. After a de novo review of the record, we conclude that the district court's judgment was correct and should be affirmed. See Roberson v. Hayti Police Dept., 241 F.3d 992, 994 (8th Cir. 2001).

These actions arise out of a series of events that occurred on February 8, 1997, in Gassville, Arkansas. The district court's opinion sufficiently relates the events of that date. We therefore set forth below only an abbreviated version of those events.

On February 8, 1997, William Chadwick ("Chadwick"), a part-time patrol officer for the City of Gassville, responded to a call that someone had driven a truck through a wall at Plumlee Tire building, Roger Lansdown's ("Lansdown's") place of employment. While en route to Plumlee Tire, Chadwick received another call from the dispatcher stating that he was to respond to a gas "drive off" at the Citgo station in Gassville where a man driving a truck and wearing a ski mask had driven off without paying for his gas, and had written "God" at the top of the clerk's charge book. Upon Chadwick's arrival at the gas station, the clerk informed him that the person had driven to the house across the street. The truck was visible from the gas station, and Chadwick recognized it as belonging to Lansdown.

_____

[1]    The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]    The Honorable H. Franklin Waters, United States District Court Judge for the Western District of Arkansas.

2

Chadwick knew Lansdown, and knew that he had a history of mental illness, as well as a propensity for violence. Chadwick observed Lansdown as he poured gasoline on various areas of his property and lit them on fire. Lansdown's neighbor, who had also witnessed Lansdown's behavior that day, informed Chadwick that, about a week earlier, Lansdown had quit taking his medication. Chadwick suspected that Lansdown had guns in the house because a few months earlier Chadwick was at a yard sale of Lansdown's where Lansdown had shown him a rifle and a shotgun.

Chadwick watched as Lansdown broke the back door of his house to obtain entry. Lansdown then turned to Chadwick and stated "Sorry, Bill." A few moments later, Lansdown jumped through the front window of his home–shattering the glass, posted a page from the bible on a tree in his front lawn, and retreated back into his home through the broken window. Next, Lansdown was observed setting fire to the living room and heading toward the back of his house. Fearing that Lansdown was armed, Chadwick told Lansdown's neighbor not to attempt a rescue. Chadwick then called for assistance.

Shortly after Chadwick's call, law enforcement personnel and firefighters began arriving at Lansdown's home, including firefighters John Urban and his son Andy Urban. Andy Urban approached the house with his fire hose and was stopped by a police officer who told him that he could not enter the house because there was a man with a gun inside. After about five minutes the firefighters received permission from the police officers to start spraying the house with water. Prior to this time, however, a police officer had erected crime scene tape around the house, which a firefighter had torn in half. When Andy Urban approached the house, he was forced to go under the crime scene tape and inadvertently ripped the tape again. This angered some of the police officers, and what happened next was aptly described by the district court as a "turf war" between some of the firefighters and officers at the scene. At some point during the altercation, John Urban went to help Andy and was struck by a police officer. Both Urbans were threatened with arrest, but were never actually arrested.

3

The altercation was quickly broken up by a sergeant with the Baxter County Sheriff's Office.

In the meantime, Lansdown had retreated to his bedroom and was laying on his bed face down; the other side of his house was on fire. At one point, Andy Urban observed Lansdown through an open window and stated "you know we need to get him out of there." A police officer standing nearby replied, "No, let the f–ker die." Andy Urban did not attempt to rescue Lansdown, nor did any of the other law enforcement personnel or firefighters attempt to extract Lansdown from the smoke-filled room.

Thirty to forty minutes after Lansdown had started his house on fire, he was pronounced dead from smoke and soot inhalation. The cause of death was determined to be suicide.

In September 1999, the Estate of Roger Lansdown filed a civil rights action against Chadwick, Ken Hopman, the deputy sheriff of Baxter County, Baxter County, the City of Gassville, and Charles Garrison, former sheriff of Baxter County. John and Andy Urban filed a civil rights action against Baxter County and Charles Garrison. The district court granted summary judgment in favor of all defendants on all claims.

The district court determined that the Estate sued the police officers in their official capacities only,[3] that Lansdown's constitutional rights were not violated, and, without a constitutional violation, the Estate's claims for supervisory and governmental liability must fail. The district court concluded, and we agree, that, although the events of that day indicated a lack of professionalism on the part of those hired to serve the community, they did not rise to the level of constitutional violations; Lansdown "was

---

[3]   Because of an imminent trial date, the district court denied the Estate's Motion to Amend its Complaint to include claims against the police officers in their individual capacities.

wholly responsible for the situation that created the danger to his life." As for the Urban's Fourth Amendment claims, the district court held that the Urbans had not been seized by the police officers pursuant to an unconstitutional policy or custom of Baxter County or the Baxter County Sheriff's Department, which is necessary to establish supervisory or municipality liability.[4]

We have carefully reviewed the record before us and find it unnecessary to modify or to elaborate upon the district court's thorough, well-reasoned analysis. In particular, we adopt the district court's overall assessment of this case:

> [W]e feel compelled to say we are not without sympathy for Lansdown and those surviving him. The situation was extremely unfortunate and certain of the defendants' actions indicate carelessness, incompetence, and an extreme lack of professionalism that one would not expect to see exhibited by those empowered to serve and protect. In particular, the court finds appalling the altercation (or "turf war") that occurred between the defendants and the firefighters and the inexcusable statement attributed to on or more of the officers upon observing Lansdown's body through the window.

Accordingly, we affirm for the reasons stated in the district court's opinion.

A true copy.

  ATTEST:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

    [4] The district court declined to exercise jurisdiction over the remaining state law claims.